Alan Engle (Bar No. 224779)
alan.engle@meenlegal.com
MEADOR & ENGLE
5151 California Ave., Suite 100
Irvine, CA 92617
Telephone: (310) 428-6985
Facsimile: (714) 386-5368

Attorneys for Defendants Jason Luong and
Planet Express Shipping, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| SHIPITO, LLC,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>JASON LUONG, PLANET EXPRESS SHIPPING, LCC, and DOES 1 through 10,<br><br>　　　　　　Defendants. | CASE NO. 2:17−cv−08961−SJO-AGR<br><br>**REPLY TO OPPOSITION TO DEFENDANTS' EX PARTE APPLICATION TO CONTINUE THE MOTION CUTOFF DATE BY 13 DAYS**<br><br>Judge: Hon. S. James Otero<br>Hearing Date: None Requested<br>**Trial Date: January 15, 2019** |

# REPLY TO OPPOSITION TO EX PARTE MOTION TO CONTINUE MOTION CUTOFF DATE BY 13 DAYS

It is unfortunately necessary to correct a number of statements and omissions in Plaintiff's Opposition to Defendant's Ex Parte Application to Continue the Motion Cutoff Date By 13 Days that together present an inaccurate portrait of the facts and circumstances that necessitated Defendants' Ex Parte Application.

Plaintiff argues that, "Defendants have been aware of the requirements of the Federal Rules of Civil Procedure, the Local Rules, this Court's Standing Order, and the Scheduling Order for many months and have failed to diligently comply with those rules necessitating their ex parte application to modify the scheduling order." Opposition at 1.

Rule 56(b) states that, "Unless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery." Fed. R. Civ. P 56(b). The Court, per the language of the Rule, may modify the deadline, but the default rule suggests that the Rules Committee felt it generally appropriate for such motions to be filed after the close of discovery.[1] As the Scheduling Order lists the "Motion Cutoff" as November 13, approximately 30 days after the October 15 close of discovery, which is consistent with the default procedure of Rule 56, unwary counsel could be led, as happened here, to calendar the "Motion Cutoff" date in the Scheduling Order as the last day to file motions. It is inaccurate and presumptuous to argue that

---

[1] While this Court and others support the filing of early motions for summary judgement (Standing Order sec. 27), only one such motion is permitted without prior Court approval (*id.* at sec. 27(a)), effectively encouraging litigants to wait until after the close of discovery so they are sure which facts are actually undisputed and can avoid potential Rule 56(d) arguments that additional discovery is required before the matters raised are ripe for adjudication. Fed. R. Civ. P. 56(d). This is particularly true where, as here, the contemplated motion would be based in part on the lack of any evidence supporting plaintiff's claim.

"Defendant was aware of the Requirements of the Federal Rules..." as though the Federal Rules supported their position and counsel was somehow "aware" of this.[2]

It is conceded that the Court's Standing Order specifies that the "Motion Cutoff" should be read as the last day for a motion hearing to be set (sec. 23(b)), though counsel respectfully suggests that the language of the Scheduling Order could perhaps be more clear (perhaps, e.g., "Last day for motions to be heard" instead of "Motion Cutoff"). Further, as Defendants' Ex Parte Application notes and Plaintiff's Opposition effectively concedes, the Scheduling Order in this case (Dkt #47) read in light of the Court's Standing Order (Dkt #37), would require a motion for summary judgment to be filed a week prior to the close of discovery because there is a protective order in place. With a view to the default procedure of Rule 56 and the aims of Rule 1, counsel respectfully suggests that it would be generally inefficient to require dispositive motions to be filed prior to the close of discovery. (Fed. R. Civ. P. 1)

Counsel is frankly puzzled by plaintiff's next argument that "Defendants' requested relief is necessitated by their own, minimal involvement in the case and disregard for the governing rules." Opposition at 3. Counsel for defendants has been lead counsel since first appearing in this case almost a year ago. On October 13, 2017, counsel filed a Motion to Dismiss or Transfer this case from the District of [3]Utah, which was granted because the venue where plaintiff chose to file suit lacked personal jurisdiction over either defendant. (Motion to Dismiss or Transfer, Dkt #13). Plaintiff then states that counsel did not attend the March 12, 2018

---

[2] In fact, when counsel for defendants first raised the issue of the immanent motion deadline during the October 10 inspection of defendants' facility with Mr. Chadwick, the junior attorney on plaintiff's team, he seemed surprised by the impending deadline and suggested that a one month extension may be preferable to a two week extension. Counsel for plaintiff responded that trial was upcoming in early January (mistakenly stating January 9, when January 15 is the actual date) and noted the Court may not be amenable to a prolonged extension.

[3]

3
REPLY TO EX PARTE APPLICATION TO CONTINUE MOTION CUTOFF DATE
2:17−cv−08961−SJO-AGR

Scheduling Conference. In fact, counsel arrived to the conference approximately 20 minutes late after traveling from Irvine and picking up Defendant Luong in Gardena due to an unexpected hour-long traffic delay on the 110. Counsel was disappointed to see Judge Otero leaving the courtroom just as he and his client arrived and requested the clerk note their unfortunately belated presence.

Perhaps the primary concern plaintiff raises as to defendants "minimal involvement in the case" is that until last month defendants' served only one discovery request, a single interrogatory asking plaintiff to "[i]dentify with specificity each and every alleged trade secret that You contend either named defendant misappropriated from Shipito." Plaintiff elaborates at length about how it has provided "detailed" information regarding their alleged trade secrets. What they fail to note is that they have had to repeatedly supplement their response to Interrogatory No. 1 because Magistrate Rosenberg has ordered them to. (Minute Orders, Dkt 56 and 60)

On September 27, 2018, Plaintiff served its Fourth Supplemental Response to Interrogatory No. 1 (attached hereto as Exhibit 1) in response to another meet in confer held by the parties concerning identification of the alleged trade secrets at issue. The Fourth Supplemental Response again contains largely boilerplate disguised as the identification of trade secrets. On the day it was received defendants again contacted the Magistrate's Deputy Clerk schedule a third hearing to compel a response and requesting related sanctions. The clerk responded the following day, September 28, noting that a request for sanctions could not be handled by telephone and gave the parties permission to brief the matter.

It was in preparing to brief the matter a few days later that counsel for defendants re-reviewed the Court's Standing Order and determined that plaintiff's repeated failures to provide an adequate description of the alleged trade secrets had essentially succeeded in running out the clock on a third motion to compel.

4
REPLY TO EX PARTE APPLICATION TO CONTINUE MOTION CUTOFF DATE
2:17−cv−08961−SJO-AGR

(Standing Order sec. 22(a) ("Any motion challenging the adequacy of discovery responses must be calendared sufficiently in advance of the cutoff date to permit any compelled responses to be obtained before that date.") In fact, counsel for defendants informed counsel for plaintiff on October 10 that defendants no longer intended to file a third motion to compel in light of the expired deadline for such a motion given the Court's Standing Order. However, counsel for defendants believes that the repeated insufficient responses to Interrogatory No. 1 provide grounds for summary judgment, hence the present ex parte motion to permit such a motion (by both parties).

**II. Plaintiff's Allegations Concerning Allegedly Belated Discovery Requests**

It is necessary to also address plaintiff's disquieting statements as to its responses (or likely non-responses) to Defendants' Second Set of Discovery Requests, served at 12:00 am on September 16. Ex. 2, email serving Defendants' Second Set of Discovery Requests. Counsel held off serving additional discovery while awaiting an adequate response to Interrogatory No. 1 because conducting unfocused inquiry, particularly on an issue where plaintiff has the burden, would have been expensive and inefficient given the nature of the case and the relatively small size of defendants, an individual and his currently money-losing start-up in the same industry as plaintiff, his former employer. *See* Fed. R. Civ. P. 26(b)(1).

While the Defend Trade Secrets Act is a recent federal law, California's long experience with trade secret claims led it to enact a specific statute that stays discovery until a plaintiff adequately discloses its alleged trade secrets. Cal. Code Civ. P. § 2019.210 ("In any action alleging the misappropriation of a trade secret...before commencing discovery relating to the trade secret, the party alleging the misappropriation shall identify the trade secret with reasonable particularity...."). The legislature was apparently convinced the wisdom of experience suggested

5
REPLY TO EX PARTE APPLICATION TO CONTINUE MOTION CUTOFF DATE
2:17−cv−08961−SJO-AGR

plaintiffs often assert trade secret claims to burden competitors and conduct fishing expeditions.[4] In terms that directly mirror the present case, a Memorandum circulated among the legislature noted that:

> For example, where a plaintiff's employee quits and opens a competing business, a plaintiff often files a lawsuit for trade secret misappropriation which states that the defendant took and is using the plaintiff's trade secrets, but does not identify the trade secrets. The plaintiff can then embark upon extensive discovery which the new business is ill equipped to afford. Furthermore, by not informing the defendant with any degree of specificity as to what the alleged trade secrets are, defendant may be forced to disclose its own business or trade secrets, even though those matters may be irrelevant, and the defendant may not learn the exact nature of the supposedly misappropriated trade secrets until the eve of trial.

*Computer Economics, Inc. v. Gartner Group*, 50 F.Supp.2d 980, 985 n.6 (S.D. Cal. 1999), quoting Memorandum from Messrs. John Carson and Greg Wood to Assemblyman Harris re: Assembly Bill 501. In this case, there is a live prospect that plaintiff will be able to try its nonspecific trade secret claims without having to defend them against a motion for summary judgment, even though Magistrate Rosenberg found them inadequate both times she reviewed them.

Plaintiff's Opposition appears to assert that it is not even required to answer defendants' pending discovery–the only requests they have served other than Interrogatory No. 1. Plaintiff's contentions are incorrect and improper and again reveal why defendants must be allow to move for summary judgment. Plaintiff claims that defendant waited too long to serve its discovery. On the contrary, defendants waited as long as they could in the hope that discovery would be

---

[4] Even with their concerns about a potential fishing expedition, defendants have produced, without resistance, its entire source code, essentially all communications with its software developers, a spreadsheet listing the 7500 customers who have signed up for its services, a spreadsheet showing essentially every package it has ever shipped, including where and to whom, and approximately 700 pages of emails. Defendants also permitted plaintiff to inspect its facility without objection.

informed by an adequate disclosure of what this case is actually about. Failing to receive sufficient information, defendants served their discovery requests 30 days before the discovery cutoff. While defendants would have preferred to send their requests at noon or 6 p.m., lightly staffed litigation sometimes involves sacrifices, such as serving discovery at the deadline, or drafting reply briefs in a Utah hotel room the morning of an important deposition. Professional curtesy typically involves counsel accommodating such realities. *See, e.g., Hyperphase Technologies v. Microsoft Corp.*, 2003 WL 21920041 (W.D. Wis.), 56 Fed.R.Serv.3d 467 ("Wounded though this court may be by Microsoft's four minute and twenty-seven second dereliction of duty, it will transcend the affront and forgive the tardiness..."), attached as Ex. 3.

However, plaintiff instead argues that because it received defendants' Requests at 1:01 a.m. MDT (12:01 a.m. PST) on September 16, 2018, it need not respond to the Requests. Not only is plaintiff's argument revealingly unprofessional, it is legally incorrect. As the attached screenshot shows, the Requests were sent at 12:00 a.m. PST, which is all that is required under the Federal Rules.[5] According to the Federal Rules, the "last day" for items to be filed (and, presumably, served) electronically ends "at midnight in the court's time zone." Fed. R. Civ. P 6(a)(4). Defendants Requests were timely served at midnight of September 15 under the Federal rules (which, to be fair, is also 12:00 a.m. on the 16th according to the U.S. Naval Observatory), and plaintiff's responses are due on October 15 at midnight. See "Midnight", https://en.wikipedia.org/wiki/Midnight, discussing ambiguity of the term.

---

[5] Again, while counsel would have liked to serve the requests earlier that day, they were ultimately finalized shortly after 11 p.m. and technical issues delayed their ultimate service.

7
REPLY TO EX PARTE APPLICATION TO CONTINUE MOTION CUTOFF DATE
2:17−cv−08961−SJO-AGR

     Even if Defendants' requests were served late, say at 12:30 a.m. PST, plaintiff should be required to provide responses because any delay in serving the Requests was due to plaintiff's failure to adhere to Magistrate Rosenberg's July 9 Order compelling an adequate disclosure of its alleged trade secrets. See August 2, 2018 Order Compelling Supplement Response, Dkt #60. If plaintiff has at some prior stage of this case provided a legally sufficient response to Interrogatory No. 1, defendants would not have had to wait until the close of discovery to serve its follow-up requests.

     More generally, in light of the argument in plaintiff's Opposition that defendants' Requests were served late and therefore require no response (an argument raised for the first time in its Opposition and not mentioned during the three days counsel were together last week), Defendants respectfully request that the Court issue one of the following Orders in its discretion: 1) that the requests were timely served, 2) that plaintiff is to provide a full and adequate response to the Discovery Requests on or before Friday, October 19, 2018 at midnight PST, or 3) that the discovery cutoff be extended to October 16, 2018.

                                         Respectfully submitted,

Dated: October 15, 2018          MEADOR & ENGLE

                                        */s/ Alan Engle*
                                          Alan E. Engle
                                    5151 California Ave, Suite 100
                                    Irvine, CA 92617
                                    310-428-6985
                                    alan.engle@meenlegal.com
                                    Attorneys for Defendants Jason Luong and Planet Express, LLC